THE FIRST NATIONAL BANK OF THE CITY OF NEW YORK, Plaintiff,
 *v.* BANKERS TRUST COMPANY and Others, Defendants.

Supreme Court, New York County, April 16, 1934.

*Proskauer, Rose & Paskus* [*Joseph M. Proskauer, Thomas E. Dewey, Jr.,* and *Eugene Eisenmann* of counsel], for the plaintiff.

*Eidlitz, French & Sullivan* [*Harry N. French* and *Joseph G. Fink* of counsel], for the defendent Bankers Trust Company.

*Nevius, Brett & Kellogg* [*Franklin Nevius* and *Robert B. Jarvis* of counsel], for the defendant Thompson-Starrett Company, Inc.

*Wickes & Nielson* [*Robert H. Nielson* of counsel], for the defendant Foundation Company.

*William J. McArthur,* for the defendant United States Fidelity and Guaranty Company.

HOFSTADTER, J. The action originally was between the plaintiff and the defendant Bankers Trust Company for damages to the plaintiff's property, complained to have been occasioned by the building operations on an adjacent plot owned by the defendant.

On May 21, 1931, the Bankers Trust Company and the Thompson-Starrett Company, Inc., entered into a contract whereby the latter agreed to construct an addition to the Bankers Trust Building at 14 Wall street in the city of New York on a cost plus a fixed fee basis. It was contemplated by the agreement that a portion of the work would be subcontracted by the general contractor and in accordance with the provisions of the contract the defendant Foundation Company was engaged to do the excavating and foundation work.

The defendant United States Fidelity and Guaranty Company and the Foundation Company posted a bond running to the Thompson-Starrett Company in the penal sum of $686,500 guaranteeing the proper performance by the Foundation Company of its

subcontract, and in addition the Foundation Company on July 22, 1931, in consideration of the approval of the trust company to the granting of the subcontract to it, agreed in writing to indemnify the trust company against and save it harmless from any claims for damages occasioned by the operations.

After the plaintiff commenced the suit against the trust company, the Thompson-Starrett Company elected to exercise the right given it by its contract with the Foundation Company to withhold further payments due thereon and in order to secure the release of moneys then due and owing, the Foundation Company and Fidelity Company executed a further bond in the sum of $90,000, naming as obligees, among others, the Thompson-Starrett Company and the trust company.

After issue was joined between the original parties, the trust company on motion, under section 193 of the Civil Practice Act, brought in the other defendants; but the only issues actually litigated on the trial were those between the plaintiff and the trust company, arising from the plaintiff's claim of the violation of section 230, subdivision 3, of the Building Code of the City of New York, which reads in part as follows:

" 3. Support of neighboring walls. a. When excavation exceeds 10 feet. Whenever an excavation is intended to be, or shall be carried to the depth of more than 10 feet below the curb, the person causing such excavation to be made shall at all times, if afforded the necessary license to enter upon the adjoining land, and not otherwise, at his own expense, preserve and protect from injury any wall, building or structure, the safety of which may be affected by said excavation, and support the same by proper foundations, whether the said wall, building or structure is down more or less than 10 feet below the curb."

The case was submitted to the jury, not on any theory of negligence, but solely on the question of compliance or non-compliance with the obligation imposed by the Building Code. The jury found that the foundation and excavation work (performed by the foundation company) resulted in actionable damages and awarded the plaintiff a verdict against the defendant trust company in the sum of $237,500. By consent on stipulation, only these issues were submitted to the jury, all questions among the defendants being reserved for the court, to be disposed of after the verdict.

The Thompson-Starrett Company disputes any liability to the trust company; and the Foundation Company and Fidelity Company, while not seriously disputing ultimate liability, insist that their liability is prospective only and that judgments provisional in nature should be entered against them.

The Thompson-Starrett Company is liable to the trust company for the amount of damages to the property of the plaintiff as determined by the jury. Such liability arises from the obligation undertaken in article 12 of the general conditions, which requires that it shall " adequately protect adjacent property as required by law and the Contract Documents," or alternatively in article 36 thereof, by which it agreed to be fully responsible for the acts and omissions of its subcontractor.

Though the contract provides that in the event of any inconsistency between the general conditions and the agreement, the latter controls, there is nothing in articles 6, 9 or 10 of the agreement which is inconsistent with the general conditions, and, therefore, the Thompson-Starrett Company is not relieved of the obligations assumed thereunder.

I regard as unreal the contention that since article 6 of the agreement specifies the costs incurred by the contractor that will *not* be reimbursed by the owner, the loss herein involved is by negative implication one which is reimbursable, and having already fallen on the owner, must be permitted to remain with it to avoid an absurd circuity of transference of loss. A loss to the owner resulting from a breach of a definitive obligation assumed by a contractor is obviously quite different from an incidental cost occurring in the cost of construction. The doctrine of *expressio unius est exclusio alterius* clearly is not applicable to this situation. Such contention assumes the very issue in dispute, namely, whether the failure on the part of the contractor to protect adequately adjacent property was a breach of its contract with the trust company, or whether it was an incidental cost. A loss due to the contractor's own breach of contract could not conceivably be a compensable cost within the contemplation of the parties, for it would burden the innocent party with the resultant penalty.

The Thompson-Starrett Company is *not* being charged with the acts or omissions of the Foundation Company. It *is* being charged with its own failure to comply with the obligation undertaken therein. The duty to protect the plaintiff's property from any injury arising in connection with the contract is not qualified by considerations of whether the work was done carefully or negligently. Therefore, the provision in article 9 that the contractor is not liable for the negligence of any person other than itself or its direct employees (assuming that a subcontractor is not such an employee [*McCluskey v. Cromwell*, 11 N. Y. 593]) has no bearing on the question.

Likewise the provisions of article 10 of the agreement vesting in the owner the right to direct what part of the work shall be subcontracted, and reserving to it a veto power over the selection

of the subcontractor, clearly do not conflict with the provisions of article 12 or 36 of the general conditions.

Nor is there any merit to the conclusion sought for that the conduct of the parties was such as to substitute the liability of the subcontractor for that of the Thompson-Starrett Company. It is important to note that the contract of the Foundation Company to do the excavation and foundation work was with the Thompson-Starrett Company and not with the owner. In order to fully protect itself from the liability assumed in articles 12 and 36, the contractor obtained a surety bond to guarantee faithful performance. (Although the trust company was not named as obligee in the original undertaking it is, together with the named obligee, a joint beneficiary and may recover thereunder against the principal and surety in this action as all the parties are before the court. [*Johnson Service Co.* v. *Monin, Inc.*, 253 N. Y. 417, 422].) The fact that in giving its approval to the subcontract the trust company required, out of an abundance of caution and desire for reassurance, a special indemnity agreement from the subcontractor, did not serve to relieve the Thompson-Starrett Company from the express obligation of its contract with the owner.

Finally, the Thompson-Starrett Company cannot avoid liability on the theory that it was acting merely as agent for the trust company. It was not such agent. A cost-plus fixed fee contract in and of itself does not establish the relationship of principal and agent as between the contracting parties with respect to engaging subcontractors to perform work thereunder, even though contemplated by the provisions of the contract. A cost-plus contract is in no different category than any other construction contract. (*Hamilton* v. *Coogan,* 7 Misc. 677; affd., 148 N. Y. 753; *Deeves & Son* v. *Manhattan Life Ins. Co.,* 195 id. 324.) Therefore, the existence of the relationship of principal and agent must be determined in the light of the intent of the parties as evidenced by the entire written instrument, and, reading the provisions of the contract fairly, they do not support the suggested relationship, but rather expressly negative it. The Thompson-Starrett Company is designated throughout the entire contract as the " contractor." The fact that the trust company reserved the right to direct what part of the work shall be subcontracted and the power to withhold approval of bids of subcontractors is wholly consistent with the relationship of owner and contractor, and does not tend to suggest any agency, especially when read in the light of the declaration of article 36 of the general conditions that " nothing contained in the Contract Documents shall create any contractual relationship between any subcontractor and the owner."

The Thompson-Starrett Company is bound by its direct engagements under the contract. The breach and resultant damage having been determined by the verdict of the jury, an immediate and liquidated liability in favor of the defendant trust company is established and must, therefore, be followed by a definitive judgment.

The defendants Foundation Company and Fidelity Company are in a different category: their liability is essentially conditional, due to the nature of the indemnity agreement upon which their liability must be predicated, and the judgment against them will be provisional only.

A covenant to indemnify and save harmless against any and all claims and demands for damages has been consistently construed as an indemnity against actual loss in contradistinction to an indemnity against liability. (*Aberdeen* v. *Blackmar*, 6 Hill, 324; *Gilbert* v. *Wiman*, 1 N. Y. 550; *Norris* v. *Reynolds*, 131 App. Div. 818.) Indeed, in the absence of an express provision in the bond to the contrary, the undertaking will not be deemed to indemnify against liability. (*MacArthur Brothers* v. *Kerr*, 213 N. Y. 360, 365.) The rationale of these decisions is that a court of law will only compensate for loss actually suffered — unless the parties have expressly contracted otherwise. *Ex concesso* in a *separate* action brought on the indemnity agreements herein, the indemnitees would not only have had to plead and prove the existence of a claim and judgment, but also that the judgment obtained had been satisfied by payment.

But they have been brought into *this* action, and the order of this court at Special Term (from which no appeal was taken) establishes it as the law of the case that the defendants Fidelity Company and Foundation Company are *properly* here. Counsel do not raise the point and it would be unprofitable to explore the doubt cast on the propriety of their inclusion by the case of *Kromback* v. *Killian* (215 App. Div. 19). It may well be that the court in the case cited construed the provisions of section 193 of the Civil Practice Act too rigidly. (See *Hejza* v. *N. Y. C. R. R. Co.*, 230 App. Div. 624.)

Section 193, subdivision 2, of the Civil Practice Act permits a defendant to bring in an additional party by the service of a supplemental complaint where a separable controversy exists between the parties relating to the original cause of action and where the party brought in ultimately " is or *will be* liable " for the claim made by the plaintiff. (*Municipal Service Real Estate Co., Inc.*, v. *D. B. & M. Holding Corp.*, 257 N. Y. 423.) It is further provided that the claim of the original defendant shall

proceed " to such judgment as *may be proper*." While this section has been in effect since 1922, there have been no reported decisions which have specifically considered the nature and extent of judgments which might be entered, and this necessitates a consideration of the purposes of the enactment and harmonizing them with the substantive rights of an indemnitor against loss. brought into an action as an additional defendant.

The statute is procedural only and is not to be construed to give rise to any new rights, other than those within the intendment of the act. The purpose of the act by its very terms is to avoid delay and circuity of actions and to enable a controversy relating to the same subject-matter to be disposed of in one suit. (*Travlos* v. *Commercial Union of America*, 217 N. Y. 352; *Municipal Service Real Estate Co., Inc.*, v. *D. B. & M. Holding Corp.*, 257 id. 423; *Davis* v. *Hauk & Schmidt, Inc.*, 232 App. Div. 556.) Without impairing any substantive rights, it should be construed liberally in order to effectuate the legislative intent. (Civ. Prac. Act, § 2; *Riley* v. *Wood*, 139 Misc. 314; *Hejza* v. *N. Y. C. R. R. Co.*, *supra*, 626.)

It would defeat the avowed purpose of the section not to permit any judgment to be entered when the liability of the indemnitors is clearly in prospect; but to grant a coercive judgment without taking account of the conditions precedent necessary had a separate suit been instituted in effect would be modifying the cause of action. The provisions of section 193 do not affect the basic rights and liabilities of the parties. A statute initiating changes in procedure cannot be construed to cause a rewriting of a contractual undertaking with the imposition of burdens not assumed by the contracting parties. In order to give this section the effect which its passage was intended to secure and to avoid doing violence to the existing substantive rights of the parties, provisional judgments should be entered providing that the indemnitors will be required to satisfy the judgments against them when payment shall have been made by their next succeeding indemnitee.

This conclusion follows appropriately from the language of section 193 that a claim shall proceed to a judgment " as *may be proper*." This language clearly indicates that the form of judgment in each instance is dependent upon the facts of the particular case presented to the court.

The motions of the defendants are disposed of in accordance with this opinion. Settle orders on five days' notice.